Good morning, Your Honors. My name is Brian Fay, and I represent Freddie Ameline. It's been a career for you. It's been a long haul. And I would like to start out by giving the panel some good news. That is that I don't believe that there's any way that I could take 20 minutes to argue the issue that I'm going to argue here today. I'm not going to touch on the ex post facto law. I know that we have decisions in that regard. I know this panel can't overturn another panel, and so I'm not going to touch it. I'm just going to address the issue here, which, as I've stated in my brief, is whether the district court abused its discretion in using Lefebvre's hearsay statement instead of his sworn in-court testimony to determine drug quantities at the sentencing hearing. And at that hearing, it really boiled down to two transactions. Lauren came in and said, we had about 10 transactions for a total of 10 ounces of methamphetamine. And in the hearsay statement, he said that we had had about 10 transactions for a total of 20 ounces. And there were really two transactions at the sentencing hearing that really were the focus of discussion. And that was two transactions for five ounces each. And I submit to you that it was an abuse of discretion for the court to, if you look at the entire record, for the court to believe that hearsay statement over and above the sworn testimony of the court. And the court, at the end of the sentencing hearing, gave some reasons why he chose to believe the hearsay statement. The first was that he had previously found Lauren Lefebvre to be a credible witness. He didn't say that he didn't find him to be incredible at the sentencing hearing. And from what I heard the judge say and what appears in the record, it would appear that what he's saying is that I find Lauren Lefebvre to be a credible witness. Well, that works to my client's advantage, that he finds Lauren Lefebvre to be a credible witness. Excuse me. Go ahead. It does and it doesn't, because in 2005 at the resentencing, he also makes a point of saying, with regard to his earlier sentence, I can't imagine myself lying on that statement. So if he's accepted as credible in 2005, that includes being accepted as credible and saying, well, whatever I said in 2001 was accurate. It's closer to the time in question, so on and so forth, and the court can base its decision on that. Not only that, at the time he made his statement, which you want us to rely on, he said that's what he recalls. He didn't say this is what happened and this is that. Actually, what he says in the transcript is that, with reference to those two five-pound transactions, he says... Two five ounces. Excuse me, five ounces. Two five pounds. If you want to stipulate to that, we've got a very short argument. With reference to the two five-ounce transactions, he says, in court, I don't remember making the statement. I don't. I was surprised when I saw it in my statement, and given the way I was, a user and abuser, not only couldn't I remember, I can't imagine that I ever would have made that statement. I can't imagine that's what he says in court. He said two things. The judge listened to all his testimony and then interceded forcefully and said, well, let's see if we can't cut through this a little bit. When you gave the statement that's recorded on this exhibit that you've been looking at, the witness, uh-huh. The court, your lawyer was there. Is that right? The witness? Yeah. The court, did you try to tell the truth then? The witness, yes, sir, I did. The court, and did you tell the truth as far as you know? The witness, yes, sir, to the best of my knowledge, everything I said. I couldn't imagine that I would lie. The court, well, do you believe that you told the truth at that time? The witness, yes, sir. The court, all right, I'm satisfied with that. Why isn't that past recollection recorded, plain and simple? The witness, at a time when he knew, stated the truthfulness of the matter. It was recorded. He presently has no recollection. Past recollection recorded. End of story. Exception of the hearsay rule. Next. What? I think that the court should look at the entire circumstances under which the sentencing. No, no, no. Your point is that you can't rely on hearsay at the sentencing hearing. The point I've been trying to make is that perhaps it isn't inadmissible hearsay. It is admissible hearsay. But. And we don't have to weigh whether he could have found differently. All we have to do is say, was he abusing his discretion if he found that it was admissible hearsay? In other words, we don't retry the case. We review the case. Well, we. It's tough. I know. And the judge sure didn't help you. I don't know the answer to that question. My. If it's past recollection recorded. And is therefore an exception to the hearsay statement. I. I don't know that it would be an exception to the hearsay statement. The fact that he doesn't even remember making the statement. Well, that's part of the whole past recollection recorded is I don't remember the facts. But I knew them then. And they were recorded. And I told the truth. And I was accurate. So I don't have a recollection of the facts right now. I can't imagine why I would lie. But at that time, I did. And at that time, this is the record of what I said. It's true. He doesn't remember perhaps making the statement. But the fact that he made the statement doesn't appear to be in dispute. He. I. I agree with him. And so either. And in fact, I'm not even sure you need the hearsay exception because you can use hearsay at sentencing. Right. In this year of reliability. But that's one in this year of reliability. That in fact, he did make the statement at the time. It is a past recollection recorded. And in 2005, he says, whatever I said, it would have been truthful, which is in addition of reliability. Right. So. But wouldn't the court also have to look at the other circumstances? And that's, I guess, my point is in making a determination about reliability, look at the fact that he is an addict, an informant, a co-defendant, all subjecting that testimony to greater scrutiny. Those are certainly arguable factors to put to the trial court at sentencing. But when we review the sentencing decision, we review it as to whether there was any evidence upon which the court could have found truthfulness of a favor. And was he abusing his discretion when he so found? Our standard of review is rather limited in that regard. I understand. My point is that looking at the record as a whole, that statement of August 2001 is a statement that he couldn't even imagine making. Because five ounces is just a lot for him to buy. Way over what he would ordinarily do. Very uncharacteristic amount. That's a good argument. And out of ten transactions, common sense would tell us that he would have a recollection of those two transactions. Well, you're not a user, and neither are we. I don't know what he recalls, but he is a heavy user, isn't he? I mean, maybe he's no longer, but he certainly was at that time. He was a very heavy user. So that's why when you say common sense and what he would recall, I don't know what he recalled, but I know what he said he recalled. What he said he recalled was what he said. It was interesting, though, because when I asked him if he felt that the methamphetamine had caused any difficulty for him to recall things, he said, no, it didn't. I probably thought it was pretty good stuff, but he probably thought it didn't. I figured I could get him to agree with me there, but I couldn't. The question before us, though, and that's what I think Judge Beard was saying to you, it's a narrow question before us. What we've got to do is, did the court abuse discretion in finding the facts from this record for sentencing purposes? He has a basis, doesn't he? But you don't have to answer that. You represent your client. I understand what Judge Bay is saying, and I guess my response to that is when I look at the record in total, it appears to me to be an abuse of discretion to believe the in-court sworn testimony, where arguably this guy had something to lose coming in and testifying inconsistently with what he had previously said, and he had a whole lot to gain by saying what he did back in August of 2001. You're pointing not only to the testimony, but really the logic behind the testimony or his reasoning in 2005, which, as it is, frankly strikes me as a little odd to believe the scenario offered in 2001, given his usage pattern. And that, combined with everything else, is enough that you're arguing the package amounts to clear error. I have to look at the package. And the other thing that I wanted to point out to the court, which appears on page 75 of the transcript, and it fits into this package deal, which is where the judge on page 75 says, I take note that while I made these findings, if I were to reduce the quantity of drugs attributable to transactions with Mr. Lefevre by a substantial margin, for example, to a total of 12 ounces, I don't know where he got 12. It should have been 10. But instead of 20 ounces, that would be 340.2 grams attributable to this defendant from the transactions with Lefevre, which added to the 171 from before would only give me 510. And I think this guy, and he says, and I am convinced beyond a reasonable doubt that the quantity of drugs attributable to Mr. Ameline exceeds, in this instance, 500 grams. So that remark to me is troubling in the sense that he has a notion of what it is this fellow has done, but it doesn't appear to be a notion that is based on reliable facts, the sworn testimony. And the other thing is that he discarded the hearsay statements for everybody else who came in, or all the other hearsay statements which were found to be incredible because sworn testimony was brought in, which contradicted it. And to me, he's working backwards instead of making an objective, conscientious analysis of what was before him. And that's my point. And I believe that when the record is looked at as a whole, that there was an abuse of discretion there and that this sentence should be predicated on the sworn testimony in court as to the amounts. Thank you. Well, but pardon me. Let me ask you one question. If the level at which the 135 months is sentencing guideline level is 500 grams of methamphetamine, we know that he found 737 grams. But if it's 500 grams, the paragraph you quoted still gets him over 500 grams. It puts him at 510.30. Right. I know. So, I mean, even if you win, you lose. Well, I don't because he used that number based on 12 ounces. Instead of 10. Instead of 10. And the 10 gets you down to 478. I got you. Thanks. Good morning again, Your Honors. Lori Sook, Assistant United States Attorney from the District of Montana. Again, we're in a position of not reweighing what Judge Haddon did at the district court, but trying to decide whether he erred. And if you look at the totality of the circumstances of this sentencing, which is what the defendant wants you to do, there are some realities for Freddie Ameline that aren't good. One of them being that he was the only witness that the court found who lied under oath. Who's he? Freddie Ameline, the defendant in this case. And so he lied not only in contradicting his prior testimony, but in contradicting the testimony of a witness to a transaction. And this is only brought up because he's not challenging the gun enhancement at this point, which is what he did at the district court. But that was part of the calculus that the district court used in trying to decide who to believe. And Loren Lefebvre, there's no doubt that he did not go down the line on his 2001 statement and testify, yes, this is correct, yes, this is correct, yes, this is correct. But there's another way to look at that. He certainly wasn't coached by the government or threatened by the government. He specifically said that. What he did in the view of the district court was be entirely honest. I said that. I can't believe that I lied. In fact, I tried to tell the truth. I can't recall it now. It seems unbelievable that I would have transacted five ounces two times. And to be clear, what the testimony is that there were ten transactions about an ounce apiece for ten ounces, and then there were two transactions in addition to that of five ounces each that he told the agents about. So in order to try to give the district court some help about how do you determine which testimony to believe, because Loren Lefebvre did not come in, let's be clear, he did not come in and say, I did not transact two times five ounces with Freddie Ameline. He did not say that. He didn't contradict himself. What he said was, I said that. I believe I was telling the truth. I just can't imagine that I would have done that, and I don't recall saying it. So why would that statement be reliable? Well, we presented the case agent, one of the participants, to that interview to talk about his demeanor at the time of the interview, whether he was under the influence of methamphetamine, was he answering questions appropriately, and also another important factor to consider in the totality. His sworn testimony was almost entirely consistent with this 2001 statement, except for these two transactions. I can't give you an explanation as to why he is now stepping backwards from those two transactions. Common sense doesn't seem to support that, because he was done with his sentence at that point. But what the district court had to decide was what testimony to believe. And for some very good reasons, he believed Mr. Lefebvre's outlining of his transactions with Mr. Amoline in 2001. Let me ask what you just commented on in terms of common sense. I'm not sure I follow why it is that you say common sense weighs in favor of taking the 2001 testimony at face value. Well, what I'm saying is it doesn't. It seems that that's why would he back, why in 2001, when he was in the middle of a prosecution, talk about these statements, five ounces apiece, and now when there's no real penalty attendant to saying it anymore, as there would have been then when he was still facing prosecution and sentencing, he backs out of that statement. What I'm telling you, I think it was a follow-up to your comment. It doesn't seem logical that he would do that. There doesn't seem to be an explanation. Like sometimes you get an explanation, the person is lying to minimize their conduct, or they're lying to get a better benefit from the government. Why did he do it? Except that he just couldn't recall, and he was being completely candid with the district court. What happened to Lefebvre? In 2001, he was in jeopardy of being convicted, right? He was. And then he pleaded. He was in the middle of being indicted. He pled guilty, and he was sentenced. It's so unimaginable that he was cooperating with the authorities and boosting the amount of methamphetamine in order to sink his former supplier, but now that he's pleaded or done his time or whatever he's done, now he wants to tell the truth and say, I can't imagine I bought five ounces because I was a tweaker, as he calls it. He was just a one-ounce guy. And that's a logical following, Judge Bea, except that he wasn't under a plea agreement at the time he gave that statement in 2001. So he was providing drug quantity that could be used against him and was. That's what I'm saying. It's illogical. That's right. Make yourself a bigger drug dealer than you are, and maybe the government will give you even more benefit. That certainly does happen. And we try and avoid that, knowing that that happens. You know, you're telling the truth. Be conservative. Understand that these amounts can be used against you. We want to know the truth as best as you can recall it. So it doesn't — that line of thinking doesn't seem to follow. But the only thing that the record tells us from Loren Lefebvre and what Judge Haddon had, was that the 2001 statement was temporarily more closer to the transactions in question. The agent, although he was a drug user at the time and was very much closer to having used drugs, the agent was clear. He wasn't under the influence of methamphetamine. I had a lot of experience, undercover narcotics cop, in dealing with people using methamphetamine. That's not the way he was at the interview. He was answering questions appropriately. His attorney was there. All of these things Judge Haddon was throwing into the mix. He had a defendant who really was the only person who lied to him under oath, so wasn't credible. So that's what he had to decide. And what you have to decide are — you've got two standards here. I mean, the factual findings are reviewed for clear error. Did he clearly err? And I love that Haynes case. It has to stink like the smell of an unrefrigerated five-year-old dead fish or whatever it is. I mean, it's a lot. You hear that from the U.S. Attorney's Office a lot. Do you? I only just found it. But it has to be — it's a high standard because we can't — you're not a sentencing court. The district court is in the position to weigh these facts. And whether he abused his discretion in believing that this hearsay statement was reliable, and I did not even pick up on the past recollection recorded argument. But that is another option as well. Something's sick with you from teaching. Well, that did not even come to me. But in this case, the district court — another one final factor is that the district court is looking at a preponderance of evidence standard, and he — you know how strongly he felt about it from the record. He didn't find one fact in this sentencing under less than to a standard of clear and convincing evidence, and even found some beyond a reasonable doubt. Thank you. Thank you. Mr. Fay. Just one quick matter with respect to the — Mr. Lefevre's credibility at the time he made a statement, and they brought in the sheriff who was there and present, and I asked him whether Mr. Lefevre showed any signs of four days or four years of all-day, every-day methamphetamine use, and he said no. He appeared to be completely normal. And then he explained that and went on to say, and I quote — this is at page 49 of the transcript. So he could have been using methamphetamine at the time I interviewed him, but come across as a complete normal person. That wasn't how it was. So even the officer saying that when he interviewed him, he could have been high. So the fact that the officer came in and testified doesn't buttress Mr. Lefevre's credibility. And that's all I have. Thank you very much. Thank you. Thank both counsel for their argument. The Emmeline case is submitted for decision, and that concludes today's calendar, and we are recessed until tomorrow morning. Thank you. Thank you.  Thank you.
judges: Farris, Clifton, Bea